## PEOPLE v. SUPERVISORS OF EL DORADO COUNTY.

The case of The People v. Hester overruled.

A writ of *certiorari* will lie in the District Court, to review the action of the board of supervisors; otherwise their action would be beyond control.

From the necessity of the case, supervisors exercise judicial, legislative, and executive powers, in matters relating to the police and fiscal regulations of counties.

APPEAL from the District Court of the Eleventh Judicial District, County of El Dorado.

Noteware, recorder of El Dorado county, presented an affidavit to the board of supervisors in that county, stating that, for a long period of time, he had performed the duty of auditor faithfully, in drawing warrants upon the county treasurer, and prayed therein that he be allowed compensation therefor. On this affidavit, the board allowed him the sum of seventy-five cents for each and every warrant that he had drawn, as auditor, upon the treasurer, and directed him to draw a warrant in his own favor, for the amount of his services estimated upon the basis of seventy-five cents for each warrant.

After the passage of this order, Noteware drew a warrant in his own favor, for two thousand three hundred and twenty-seven dollars and seventy-five cents, presented it to the county treasurer, who registered the same, and endorsed thereon "not paid, for want of funds."

The relators alleged that they were tax-payers of El Dorado county, and interested in an economical expenditure of the public funds. That the supervisors, in allowing the Noteware claim, exceeded their jurisdiction, and violated the express provisions of law; and prayed that the treasurer might be enjoined from paying said warrant, and Noteware restrained from transferring it, and also that a writ of *certiorari* issue, to the board of supervisors, commanding them to certify their proceedings in the Noteware matter to the District Court. The relators afterwards amended the prayer of their petition, and asked that a writ of prohibition might issue, prohibiting the supervisors from doing any act affecting the Noteware claim, and that the said board be required to revoke all their previous orders.

The Court below temporarily enjoined the treasurer from paying the Noteware warrant, and Noteware from negotiating it, and also directed the *certiorari* to issue to the supervisors.

Some of the defendants answered, and others demurred to, the petition of relators. The Court below, in an elaborate opinion, on the authority of The People v. Hester alone, dismissed the petition of relators, and entered judgment for the defendants. From the judgment this appeal was taken.

*Sanderson & Hewes* for Appellant.

This proceeding was instituted for the purpose of obtaining a review of certain proceedings had by the board of supervisors, whereby a certain allowance, alleged to be illegal, was made to the said auditor, and for which the auditor had drawn his warrant, which had been presented to and accepted by the treasurer. As against the board, a writ of *certiorari*, in the first instance, was sought. As against the auditor and treasurer, an injunction restraining the first from negotiating or otherwise disposing of the warrant, and the latter from paying the same.

Subsequently, the information was so amended as to ask also for a writ of prohibition, or some other remedy, as against the board of supervisors.

The Court below refused all relief.

A writ of *certiorari* was refused, because this Court had decided in Church v. Hester, that it does not lie to the board of supervisors.

A writ of prohibition was refused, because, in the opinion of that Court, it was not the proper remedy.

In our judgment, the decision as to prohibition is correct; and, but for the case of Church v. Hester, the writ of *certiorari* would have been granted.

We seek, therefore, a review of Church v. Hester, being satisfied that the points decided in that case, could not have been maturely considered by this Court.

The ground upon which the writ of *certiorari* was refused in that case was this: "The supervisors not being judicial officers, or charged with the exercise of judicial duties, it results that the writ cannot be properly directed to them." The People ex rel. Church v. Hester, 6 Cal. R., 679.

We respectfully submit that this Court erred in saying that "supervisors are not charged with the exercise of judicial duties."

In our judgment, the act creating the board of supervisors, (Statutes of 1855, p. 53, § 9,) does charge them with the exercise of judicial duties.

They have to perform precisely the same acts that a Court would were the claim prosecuted before it. They have to hear testimony, find the facts, construe and apply the law to those

facts, to ascertain and settle the legal rights of the parties before them, and pronounce a judgment for or against one or the other.

Are not these judicial acts ?

Province of writ discussed—Ex parte Mayor, etc., of Albany, 23 Wend., 277 ; Storn *v.* Mayor, etc., by Senator Paige, 25 Wend. R., 164.

*Newell & Williams* for Respondents.

In the Court below, we questioned the right of the relators to institute this proceeding. They claim the right to occupy their present position upon the ground of being tax-payers, but, at the same time, show that their property is not in danger through taxation or otherwise, of being liable to the payment of the debt, for they say that the county is now largely in debt, and that the allowance made Noteware, defendant, increases that debt, which must be, in future, discharged. They charge the payment of the demand to posterity, without showing that they have permanent property, or might otherwise become liable ; therefore, their interest in the subject-matter of litigation is too remote.

The Statute of 1855, p. 55, § 21, by its terms, authorizes them to have appeared before the board of supervisors, and there to have resisted defendant, Noteware's, claim. Had they done so, and then, had the board allowed the claim, the relators could have sought relief by *certiorari*, (admitting that the writ would be in a proper case.) By that course, they would properly have become parties to the proceeding, and the statute authorizes *certiorari*, when there is no other remedy, etc.

We maintain, that the board is a sort of judicial body, constituted by law to decide all matters of account between individuals and the county, and that their decision stands as final until reversed by a higher tribunal, (2 Sandf. R., 472,) and that their decisions cannot be attached in any collateral proceeding, but that under the statute, persons who wish to become parties to a proceeding before them, must do so in the first instance, and thereby place themselves in a position which would enable them to apply for relief to a higher tribunal if they felt aggrieved, which application would be in the nature of an appeal.

Were it otherwise, there could be no end to the lawsuits in which a man might become involved, if he should be so unfortunate as to have an allowed claim against a county. Take the case before us, for instance : Rann and Plant have sued out this writ ; if they fail, what is to prevent *other* enemies of the defendant, Noteware, from instituting a similar proceeding, and so on through a great number of the tax-payers of the county ; but if the course we suggest be correct, then all who wished to resist the claim could have appeared before the board, made their objections, and then, necessarily, have become parties in the appeal,

or *certiorari* proceeding. Relators are too late in their opposition to defendant's claim.

MURRAY, C. J., delivered the opinion of the Court—BURNETT, J., concurring.

This was an application for a writ of *certiorari*, to review the action of the board of supervisors of El Dorado county, in a certain proceeding before them, touching the allowance of an account. After the petition had been filed, the plaintiff, by leave of the Court, amended it, asking for a writ of prohibition or injunction. The Court refused the writ, and dismissed the application. The judgment of the Court below was doubtless based on the decision of this Court in the case of The People *v.* Hester, October Term, 1856. The counsel for the appellant has sought a review of that decision, and we have cheerfully acceded to his request, as we have been satisfied for some time that the decision was incorrect, and ought not to be maintained. The case of The People *v.* Hester was submitted to us without argument; after its decision, we ordered the case to be argued for our own information, and invited the bar generally to participate in the discussion. No one feeling sufficiently interested in the Court, or the correctness of its decisions, to appear in the case, the former opinion was allowed to stand. Subsequent cases, however, showed that the rule thus established would have to be abandoned, or the most important rights of parties would be left to rest entirely upon the uncontrolled discretion or caprice of county supervisors, and that the legitimate result of the decision would be to place the inferior or subordinate agents of the people beyond the reach and control of all supervisory power.

The decision in the case of The People *v.* Hester, proceeded on the ground, that the third article of the Constitution of this State had so distributed the powers of government, as to forbid those charged with duties belonging to one, from exercising functions appertaining to another department. That by law, a writ of *certiorari* could only issue to an inferior board or officer exercising judicial functions, and that it was inconsistent with the theory of the distribution of powers by the third article, for the supervisors to exercise judicial functions. This would equally apply to the writ of prohibition, but it is not perceived on what ground the Court below, in the present case, refused to interpose by injunction.

The error in the case of The People *v.* Hester, consisted in overlooking the fifth section of the ninth article of the Constitution, which provides, that "The Legislature shall have power to provide for the election of a board of supervisors in each county, and these supervisors shall jointly and individually perform such duties as may be prescribed by law." This section must be regarded as a limitation on the third article. In using the word

"supervisors," the Constitution intended to adopt it with its known meaning, and in the sense in which it was generally understood.

The word "supervisors," when applied to county officers, has a legal signification. The duties of the officer are various and manifold; sometimes judicial, and at others, legislative and executive. From the necessity of the case, it would be impossible to reconcile them to any particular head, and, therefore, in matters relating to the police and fiscal regulations of counties, they are allowed to perform such duties as may be enjoined upon them by law, without any nice examination into the exact character of the powers conferred.

This rule will preserve the utility of these officers, while it is, at the same time, in harmony with the spirit of the Constitution itself. It remains but to add, that the decision of this Court, in the case of The People *v.* Hester, is erroneous, and that we are happy that so early an opportunity has been presented to us for correcting the same.

Judgment reversed, and cause remanded.